**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MAJOR MODEL MANAGEMENT INC.<br><br>           Debtor<br><br>PEDRO AGRA,<br><br>           Plaintiff,<br><br>vs.<br><br>GUIDO DOLCI., *et al.*,<br><br>           Defendants. | NOT FOR PUBLICATION<br><br>Chapter 11, Sub Chapter V<br><br>Case No. 22-10169 (MG)<br><br><br>Adv. Pro. No. 23-1135 (MG) |

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE**

*A P P E A R A N C E S:*

NORRIS McLAUGHLIN, PA
*Counsel for the Debtor and Debtor In Possession*
7 Times Square, 22nd Floor
New York, New York 10036
By: Melissa A. Peña,
   Esq. Anthony D'Elia, Esq.

Pedro Agra
*Pro Se Plaintiff*

1

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion (the "Motion," Adv. Pro. ECF Doc. #6)[1] of Major Model Management Inc. (the "Debtor") seeking entry of an Order, pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable here pursuant to Federal Rule of Bankruptcy Procedure 7012(b), dismissing the complaint (the "Complaint," Adv. Pro. ECF Doc. # 1) filed by Pedro Agra ("Agra") for failure to state a claim on which relief can be granted. Attached in further support of the Motion is the Declaration of Melissa A. Peña, Esq. (the "Peña Decl."), counsel to the Debtor. A copy of the Bar Date Order (as defined below) is annexed to the Motion as Exhibit A. An affidavit of service evidencing service of the bar date (the "Bar Date Notice," ECF Doc. # 67) is annexed to the Motion as Exhibit B. A copy of the ballot certification (the "Ballot Certification," ECF Doc. # 111) filed by Debtor's counsel is annexed to the Motion as Exhibit C. A copy of the order confirming the plan (the "Confirmation Order," ECF Doc. # 162) is annexed to the Motion as Exhibit D. Agra filed opposition (the "Opposition," Adv. Pro. ECF Doc. # 9), which included a declaration (the "Agra Decl.") and attached several exhibits. The Debtor filed a reply (the "Reply," Adv. Pro. ECF Doc. # 10.) The Court held a hearing on the Motion on August 3, 2023.

For the reasons stated below, the Motion is **GRANTED** and the Complaint is **DISMISSED WITH PREJUDICE** as to the Debtor, Major Model Management Inc.

---

[1] All references to "Adv. Pro. ECF Doc. #" in this opinion relate to the docket for this adversary proceeding, Case No. 23-1135. Unless otherwise indicated, all references to "ECF Doc. #" relate to the docket in the Debtor's main bankruptcy case, Case No. 22-10169.

2

# I. BACKGROUND

### A. Commencement of the Bankruptcy Case and the Identification of Agra on Debtor's Schedules

On the February 11, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code and elected to proceed as a Subchapter V case. (Motion at 2.) Heidi Sorvino, Esq. was appointed as the Subchapter V Trustee. (*Id.*) On February 25, 2022, the Debtor filed its Schedules and Statement of Financial Affairs. (*Id.*) On April 18, 2022, the Debtor amended its Schedules to identify Agra as an unsecured creditor being owed no monies from the Debtor and under the basis of the claim, stating "for notice purposes only." (*See* ECF Doc. # 64 at 100.)

### B. The Bar Date

On March 29, 2022, the Debtor filed a motion seeking to establish a bar date for the filing of proofs of claims. (*See* ECF Doc. # 43.) On April 20, 2022, the Court entered an Order setting June 6, 2022 as the bar date for filing proofs of claims against the Debtor's estate (the "Bar Date Order," ECF Doc. # 56.) On April 22, 2022, Notice of the Bar Date was mailed to all creditors identified on Debtor's schedules in accordance with the Bar Date Order. (*See* ECF Doc. # 78 and Peña Decl., Exhibit B.) Specifically, on April 22, 2022, Notice of the Bar Date was mailed to Agra at 500 E. 63rd Street, Apt. 13F, New York, NY 10055 (the "New York Address"). (Peña Decl., Exhibit B. at 16.)

### C. Confirmation Hearing Notice and Agra's Uncounted Ballots and Complaint

On March 20, 2023, the Debtor filed its Amended Subchapter V plan (the "Plan," ECF Doc. # 144). On May 10, 2023, the Court entered an Order scheduling a confirmation hearing for June 27, 2023 (the "Scheduling Order," ECF Doc. # 146). On May 12, 2023, the Scheduling

3

Order, the Plan, and ballots (where applicable) were mailed to all parties requiring notice of the same, including Agra. (*See* ECF Doc. # 147.)

Agra served Debtor's counsel with a Class 1 ballot and Class 2 ballot dated June 12, 2023, rejecting the Plan (jointly the "Ballots"). (Motion at 3.) The Ballots were both signed by Agra and identified Agra's address as the New York Address. (*Id.*) Because Agra had not timely filed a proof of claim, and the Debtor's Schedules indicated that no monies were owed to Agra and that Agra was not a "holder of a claim . . . allowed under Section 502 . . ." of the Bankruptcy Code. (*Id.*) The Debtor did not count Agra's ballots pursuant to Section 1126(a)(1) of the Bankruptcy Code. (*Id.*) However, the Debtor did inform the Court they were filed. (*See* Peña Decl., Exhibit C.) On June 26, 2023, the eve of the Debtor's confirmation hearing, Agra filed the Complaint alleging various claims against the Debtor and several other individuals and entities, which arose before the Petition Date. (*See* Complaint.)

On June 27, 2023, the Court held a confirmation hearing for the Plan. (*See* Scheduling Order ¶ 2.) At the hearing, the Court confirmed the Plan, and on June 28, 2023, the Confirmation Order was entered. (*Id.*) Mr. Agra appeared at the Confirmation Hearing and indicated he had filed an adversary proceeding. At the hearing, the Court asked him: "where have you been," given that the bar date had long passed and the Court was now confirming the plan of reorganization.

**D. Agra's Complaint**

Agra alleges that years prior to the Petition Date, "from 2009 until 2020, Plaintiff had worked for or with Defendants as a model." (Complaint ¶ 9.) Agra alleges that from 2010 through 2020, he was sexually harassed by Massimo Tacchini ("Tacchini"), who was an employee of the Debtor. (*Id.* ¶¶ 50–130.) The Complaint alleges that (a) in 2010, Tacchini

4

began making sexual comments about Agra, taking Agra's measurements alone while Agra wore only underwear, and sexually assaulted Agra; (b) in 2012, Tacchini threatened Agra into staying silent about Tacchini's actions and ceased making an effort to book jobs for Agra; (c) in 2017, Tacchini sexually assaulted Agra in a hotel room and sexually harassed him over a video call; (d) in 2018, Tacchini sexually harassed Agra on a video call; (e) in 2019, Tacchini sexually assaulted Agra in a hotel room, threatened Plaintiff, and ceased attempts to book jobs for Agra in retaliation for Agra's refusal of his advances; (f) in 2020, Debtor decided not to renew Agra's modeling contract, which Agra believes is connected with Tacchini's actions towards him; (g) in 2020, Agra reported Tacchini's sexual assaults from 2010, 2017, and 2019 to co-defendant, Guido Dolci ("Dolci"), the Debtor's president, and his claims were dismissed and not taken seriously by Dolci; and (h) in 2020, Dolci fabricated a criminal investigation in Milan, Italy against Agra for the purposes of intimidation. (*See* Complaint; Motion at 4–5.) Based on the listed events, on December 1, 2020, Agra filed a complaint against the Debtor before the New York State Division of Human Rights ("NYSDHR"). (*Id.*)

### E. The NYSDHR Investigation

NYSDHR investigated Agra's claim and issued its investigative report on February 11, 2022 (the "Investigative Report," attached to the Opposition as Exhibit 5), finding probable cause, and recommending the matter, pursuant to the Human Rights Law, for public hearing. (Agra Decl. ¶ 20). In May 2022, the Division issued an "U Nonimmigrant Status Certification" to Agra as a victim of criminal activity including abusive sexual contact, sexual assault, extortion, obstruction of justice and witness tampering, certifying that the Division "investigated or prosecuted [Defendants'] criminal activity under NY Penal Law § 130.00(3), § 155.05(e), §

5

195.05, § 130.40 and §215.10 which occurred in the United States, and that the Division found "probable cause for [Agra's] complaint." (*See* Agra Decl., Exhibit 6).

Approximately a year later, on April 26, 2023 the Division scheduled a Pre-Hearing Settlement Conference. (Agra Decl. ¶ 26.) Agra states that in face of the failure of the mediation, the Division's Administrative Judge announced that proceedings were to move to public hearing. (*Id.* ¶ 28.) The day after the settlement conference, on April 27, 2023, the Debtor sent a letter to the NYSDHR informing them of the chapter 11 case and asking that the proceedings be stayed and the final investigative report be deemed void. (Agra Decl., Exhibit 8.)

On May 1, 2023, Agra contacted the Division to announce that he is not a creditor in the bankruptcy court and to request administrative dismissal to pursue his case in federal court. (*Id.*, Exhibit 9). On May 5, 2023, the Division issued a letter, in which it stayed the proceedings due to chapter 11 case. (*Id.*, Exhibit 11.) In the letter Agra was identified as the holder of a claim against the Debtor and was advised to "protect [his] rights by filing proof of claim with the bankruptcy court". (*Id.*)

**F. Claims in the Complaint**

Based on the foregoing allegations, Agra filed the Complaint on July 26, 2023 which alleges the following causes of action against the Debtor:

a.) Count I – Objection to Discharge Under 11 U.S.C. §§ 1328(h)(2), 727(a)(12). Agra alleges that the corporate debtor is not entitled to a discharge under such provisions.
b.) Count II – Objection to Discharge Under 11 U.S.C. § 1112(b). While Agra labels this count as an "Objection to Discharge," he seeks to dismiss the Debtor's bankruptcy case, pursuant to Section 1112(b), alleging it was filed in "bad faith."
c.) Count III – Objection to Discharge Under 11 U.S.C. §727(a)(2). Agra alleges that the corporate debtor is not entitled to discharge under this provision.
d.) Count IV – Alter Ego and Piercing the Corporate Veil. Agra alleges that Debtor is an alter ego of co-defendants Dolci and Gemide SRL (the Debtor's parent company). All of the allegations therein relate to events which took place prior to the Petition Date between 2010 and 2020.

6

e.) Count V – Alter Ego and Piercing the Corporate Veil. Agra alleges alter ego and piercing the corporate veil against Dolci only.

f.) Count VI – Substantive Consolidation. Agra seeks to substantively consolidate the Debtor with non-debtors, Gemide, Major Model Miami, MensBoard Management, Dolci, and Nadia Shahrik.

g.) Count VII – Non-Dischargeability of Debt pursuant to 11 U.S.C. §§ 523(a)(4), 523(a)(6), and §523(a)(2)(a). Agra alleges that his claim against the debtor is non-dischargeable because Tacchini violated 18 U.S.C. § 1591, entitled "Sex trafficking of children or by force, fraud, or coercion."

h.) Count VIII – Non-Dischargeability of Debt pursuant to 11 U.S.C. §§ 523(a)(4), 523(a)(6), and 523(a)(2)(a). Agra alleges that his claim against the Debtor is non-dischargeable due to the Debtor's alleged negligent supervision.

i.) Count IX – Non-Dischargeability of Debt pursuant to 11 U.S.C. §§ 523(a)(4), 523(a)(6), and 523(a)(2)(a). Agra alleges that his claim against the Debtor is non-dischargeable due to the Debtor's alleged RICO violations.

j.) Count X – Non-Dischargeability of Debt pursuant to 11 U.S.C. §§ 523(a)(4), 523(a)(6), and 523(a)(2)(a). Agra alleges that his claim against the Debtor is non-dischargeable due to civil battery.

k.) Count XI – Non-Dischargeability of Debt pursuant to 11 U.S.C. §§ 523(a)(4), 523(a)(6), and 523(a)(2)(a). Agra alleges that his claim against the Debtor is non-dischargeable due to an alleged assault.

l.) Count XII – Non-Dischargeability of Debt pursuant to 11 U.S.C. §§ 523(a)(4), 523(a)(6), and 523(a)(2)(a). Agra alleges that his claim against the Debtor is non-dischargeable as the Debtor purportedly breached its contract.

m.) Count XIII – Non-Dischargeability of Debt pursuant to 11 U.S.C. §§ 523(a)(4), 523(a)(6), and 523(a)(2)(a). Agra alleges that his claim against the Debtor is non-dischargeable due to an alleged breach of fiduciary duty.

n.) Count XIV – Non-Dischargeability of Debt pursuant to 11 U.S.C. §§ 523(a)(4), 523(a)(6), and 523(a)(2)(a). Agra alleges that his claim against the Debtor is non-dischargeable as the Debtor purportedly engaged in intentional racial discrimination in violation of 42 U.S.C. § 1981.

o.) Count XV – Non-Dischargeability of Debt pursuant to 11 U.S.C. §§ 523(a)(4), 523(a)(6), and 523(a)(2)(a). Agra alleges that his claim against the Debtor is non-dischargeable as the Debtor purportedly violated 42 U.S.C §§ 1985(2) and 1985(3) which make it unlawful to conspire to deprive a person of their civil rights, obstruct justice, and intimidate parties and witnesses to any legal proceeding.

p.) Count XVI – Non-Dischargeability of Debt pursuant to 11 U.S.C. §§ 523(a)(4), 523(a)(6), and 523(a)(2)(a). Agra alleges that his claim against the Debtor is non-dischargeable as the Debtor engaged in pre-Petition acts that constituted intentional infliction of emotional distress against him.

q.) Count XVII – Non-Dischargeability of Debt pursuant to 11 U.S.C. §§ 523(a)(4), 523(a)(6), and 523(a)(2)(a). Agra alleges that his claim against the Debtor is non-dischargeable as the Debtor engaged in pre-Petition acts that constituted negligent infliction of emotional distress against him.

## II. LEGAL STANDARD

### A. Motion to Dismiss Standard

Fed R. Civ. P. 12(b)(6), made applicable hereto by Fed. R. Bankr. P. 7012(b), permits a party to dismiss a case for "failure to state a claim upon which relief can be granted." A complaint cannot survive a motion to dismiss under Rule 12(b)(6) unless it "contain[s] sufficient factual matter" to state a claim for relief that is "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The plausibility standard requires showing more than "a sheer possibility that a defendant has acted unlawfully." *Id*. It also requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 557). "Following the Supreme Court's decision in *Ashcroft v. Iqbal*, courts use a two-pronged approach when considering a motion to dismiss." *In re Residential Capital, LLC*, 495 B.R. 250, 257 (Bankr. S.D.N.Y. 2013) (citing *Weston v. Optima Commc'ns Sys., Inc.*, 2009 WL 3200653, at *2 (S.D.N.Y. Oct. 7, 2009) (applying "two-pronged" approach to deciding motions to dismiss); *S. Ill. Laborers' and Employers Health and Welfare Fund v. Pfizer, Inc.*, 2009 WL 3151807, at *3 (S.D.N.Y. Sept. 30, 2009) (same); *Inst. for Dev. of Earth Awareness v. People for the Ethical Treatment of Animals*, 2009 WL 2850230, at *3 (S.D.N.Y. Aug. 28, 2009) (same)). "First, the court must accept all factual allegations in the complaint as true, discounting legal conclusions clothed in the factual garb." *Residential Capital*, 495 B.R. at 257–58 (citing *Iqbal*, 556 U.S. at 678–79; *Boykin v. Keycorp*, 521 F.3d 202, 204 (2d Cir.2008); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir.2008)). "Second, the court must determine if these well-pleaded factual

8

allegations state a 'plausible claim for relief.'" *Residential Capital*, 495 B.R. at 258 (citing *Iqbal*, 556 U.S. at 679). Even after the court has accepted all well-pleaded factual allegations as true for the purposes of the motion, dismissal is warranted if the complaint fails to state a claim under the law. *See, e.g.*, *In re Lois/USA, Inc.*, 264 B.R. 69, 89 (Bankr. S.D.N.Y. 2009) ("Nevertheless, dismissal can and should be granted if the plaintiff's allegations, taken as true, along with any inferences that flow from them, are insufficient as a matter of law.") (citing *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (applying the Fed. R. Civ. P. 12(b)(6) standard where claims for relief were legally insufficient)); *see also In re Granite Partners, L.P.*, 210 B.R. 508, 514 (Bankr. S.D.N.Y. 1997) (noting that dismissal under the Fed. R. Civ. P. 12(b)(6) standard would be proper where the plaintiff would not be entitled to any type of relief, even if it prevailed on the merits of its factual allegations).

### B. Timely Filing a Proof of Claim

"'[T]he Due Process Clause of the Fifth Amendment dictates that a debtor's creditors receive notice of the debtor's bankruptcy case and applicable bar date so that creditors have an opportunity to make any claims they may have against the debtor's estate.'" *In re Residential Capital, LLC*, 2015 WL 2256683 at *6 (Bankr. S.D.N.Y. May 11, 2015) (quoting *In re XO Commc'ns, Inc.*, 301 B.R. 782, 791–92 (Bankr. S.D.N.Y. 2003); *see also In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. 674, 679 (Bankr. S.D.N.Y. 1993)). The Federal Rules of Bankruptcy Procedure provide that "[t]he court shall fix . . . the time within which proofs of claim or interest may be filed." *See* FED. R. BANKR. P. 3003(c)(3). Once the bar date has passed, if the claimant has failed to file a proof of claim, the claimant will not have a claim against the debtor's estate. *Residential Capital*, 2015 WL 2256683 at *6.

9

A claimant cannot pursue a debtor for claims if the claimant failed to timely file a proof of claim by the bar date. *See e.g.*, *In re Interbank Funding Corp.*, 310 B.R. 238, 251 (Bankr. S.D.N.Y. 2004) ("The bar date for claims in these cases has already passed and accordingly, [creditor]'s new 'claim' is barred."). Creditors "should not . . . be allowed to jump to the front of the line by virtue of attaching" claims which should be adjudicated in the claims allowance process to an adversary complaint. *See In re MF Global Holdings Ltd.*, 481 B.R. 268, 284–85 (Bankr. S.D.N.Y. 2012).

Courts have granted a debtor's motion to dismiss under Fed. R. Bankr. P. 7012 when a creditor seeks to assert claims against the debtor after having failed to timely file a proof of claim. *See In re FRG, Inc.*, 121 B.R. 710, 712 (Bankr. E.D. Pa. 1990) (granting motion to dismiss after finding that the "proceeding [w]as an attempt to circumvent the Plaintiffs' failure to file proofs of claim prior to the bar date in their related cases"); *Boyle v. PMA Medical Specialists, LLC*, 2017 WL 3967638 at *2, *4 (E.D. Pa. September 7, 2017) (dismissing complaint with prejudice given that plaintiff failed to file a timely proof of claim).

### III. **THE OPPOSITION**

The thrust of Opposition is that the Debtor's officers and its counsel committed perjury when they testified about the debtor's litigation situation in the bankruptcy petition filings, by omitting the ongoing NYSDHR administrative proceedings against the Debtor from bankruptcy filings. (Opposition at 1). The Opposition argues that therefore, the recent confirmation order was procured by the bankruptcy fraud. (*Id.*) Finally, the Opposition also argues that Agra was excused from filing a proof of claim by his incompetence and excusable neglect. (Opposition at 9–10.)

10

## IV. **DISCUSSION**

Agra alleges many causes of action against the Debtor in his Complaint. The Court finds that Agra has not stated a claim for which relief can be granted for any of the Counts in the Complaint. First, Agra failed to file a claim before the Bar Date and thus he is barred from asserting these pre-petition claims against the Debtor. Second, the Court need not consider whether Agra's claims are dischargeable, as alleged in Counts I, III, and Counts VII–XVII, because Agra has no claims to be discharged. Third, Count II of the Complaint does not plausibly allege that the Debtor's bankruptcy case was filed in bad faith. Fourth, Counts IV, V and VI fail to state a claim that the Debtor and non-Debtor entities should be substantively consolidated and that Agra should be permitted to pierce the corporate veil. Finally, Agra has not established excusable neglect and thus is not entitled to file a late proof of claim.

 1.  <u>Agra's Claims are Barred as He Failed to Timely File a Proof of Claim</u>

Agra received notice of the Bar Date on April 22, 2022. (Peña Decl., Exhibit B.) Despite having notice of the Bar Date, Agra did not file a proof of claim. Agra does not dispute that he received notice of the Bar Date. (*See* Agra Decl. ¶ 22 ("In May 2022, I also received the notice of the Bar Date").) Nevertheless, he took no action until nearly a year later when he cast ballots to reject the Plan, and then filed the Complaint the day before the confirmation hearing. (Motion at 14.)

The law is clear that a claimant cannot pursue a debtor for claims if the claimant did not file a timely proof of claim. *See, e.g.*, *In re Interbank Funding Corp.*, 310 B.R. 238, 251 (Bankr. S.D.N.Y. 2004) ("The bar date for claims in these cases has already passed and accordingly, [creditor]'s new 'claim' is barred.") Courts regularly grant a debtor's motion to dismiss under Fed. R. Bankr. P. 7012 when a creditor seeks to assert claims against the debtor after having

11

failed to timely file a proof of claim. *See In re FRG, Inc.*, 121 B.R. 710, 712 (Bankr. E.D. Pa. 1990) (granting motion to dismiss after finding that the "proceeding [w]as an attempt to circumvent the Plaintiffs' failure to file proofs of claim prior to the bar date in their related cases"); *Boyle v. PMA Medical Specialists*, LLC, 2017 WL 3967638 at *2, *4 (E.D. Pa. September 7, 2017) (dismissing complaint with prejudice given that plaintiff failed to file a timely proof of claim).

In *Boyle*, a case similar to the one before the Court here, the creditor failed to timely file a proof of claim after having received notice of the bar date. *Boyle*, 2017 WL 3967638 at * 2. Thereafter, the creditor filed a complaint against the debtor alleging claims which arose before the bankruptcy filing. *Id.* at *1. The Debtor moved to dismiss, and in granting the motion to dismiss, the Bankruptcy Court stated "[Debtor] maintains that Plaintiff's claim is barred due to her failure to file a proof of claim. Indeed, there is no evidence that Plaintiff made any effort to file a claim even after the passing of the bar date . . . Plaintiff received notice of the bankruptcy on several occasions yet did not act on these notices . . . Plaintiff was afforded her due process right to notice of [debtor]'s bankruptcy and was therefore given 'meaningful opportunity' to protect her claim. When Plaintiff failed to comply with the procedures of the bankruptcy court in filing a proof of claim, she relinquished her right to protect same." *Id.* at *2.

Similarly, in *FRG*, the Court dismissed a creditor's complaint against a debtor when the claim arose before the debtor's bankruptcy filing and the creditor failed to file a proof of claim by the bar date despite receiving notice of same. In granting the debtor's motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court stated as follows: "[c]learly, a creditor cannot circumvent the temporal proscription of a bar date by the facile device of filing an adversary proceeding against a debtor after the bar date has run." 121 B.R. at 714. As in *FGR*, here too

12

Agra failed to file a proof of claim even though his claim clearly arose before the petition date. Agra admits that, on December 1, 2020, nearly two years before the Petition Date, he filed a Complaint before the New York State Division of Human Rights against the Debtor arising from the same allegations. (Agra Decl. ¶ 17.)

In sum, as Agra did not file a proof of claim before the Bar Date and took no action for over a year after the Petition Date, his claims are barred.

2. Counts I, III and VII-XVII of the Complaint Fail as a Matter of Law

Because Agra's claims against the Debtor are barred, the Court need not consider whether Agra's claims against the Debtor are non-dischargeable, as Agra has no claims against the Debtor. Accordingly, Counts I, III and VII-XVII of the Complaint, which object to the Debtor's discharge, fail to state a claim and are dismissed.

3. Agra Has Failed to State a Claim in Count II that the Debtor Filed the Bankruptcy in Bad Faith

Under Count II, Agra seeks to dismiss the Debtor's bankruptcy as a bad faith filing. While Section 1112(b) of the Bankruptcy Code does not explicitly state that "bad faith" is grounds for a dismissal of a bankruptcy case, courts in this Circuit have held that bad faith is encompassed by Section 1112(b). *See In re AAGS Holdings LLC*, 608 B.R. 373, 382 (Bankr. S.D.N.Y. 2019) (citing *In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3d Cir. 1999) (collecting cases)). A petition is only considered to have been filed in bad faith "if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy. proceedings." *AAGS Holdings*, 608 B.R. at 382 (quoting *Baker v. Latham Sparrowbush Assocs.* (*In re Cohoes Indus. Terminal, Inc.*), *In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997) ("The standard in this Circuit is that a bankruptcy petition will be dismissed if

13

both objective futility of the reorganization process and subjective bad faith in filing the petition are found.").

Here, it is clear that this is not a bad faith filing as contemplated in the above cases. The Debtor has confirmed a consensual Plan which received no objections from the creditors. (Motion at 17.) Agra's allegations as to why this bankruptcy filing was in bad faith are as follows:

> (1) the Debtor defends itself against (former) models, the Debtor's main asset, who attempt(ed) to assure their right to the harassment free working environment and fair pay; (2) The Debtor has few non-insider unsecured creditors, and the Debtor's numbers [sic] unpaid model liabilities give rise to de facto secured claims as per the Debtor's business model, which based [sic] on model service commissions; (3) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's creditor to enforce their rights; (4) the Debtor had little or no cash flow resulting from siphoning of the Debtor's assets beyond the reach of creditors

(Complaint ¶ 166.)

None of these statements plausibly allege that the Debtor acted in bad faith. As to indicia one, a debtor defending claims against creditors is not bad faith. As to indicia two and three, the allegations that the Debtor has "few non-insider unsecured creditors" and that the timing of the "Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's creditors to enforce their rights" are merely "threadbare recitals" of the factors that courts consider when determining whether a case was filed in bad faith. *Iqbal*, 556 U.S. at 678; *see In re C-TC 9th Ave. P'ship,* 113 F.3d 1304 (2d Cir. 1997) (enumerating "few unsecured creditors" and "an intent to delay" as factors to consider when deciding a motion to dismiss for bad faith.) "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 664. Because these allegations do not contain

14

specific factual content, the Court rejects them.  Finally, as to indicia four, there is no plausible allegation of fraudulent transfer given that the Debtor proposed what may very well be a plan with a 100% recovery for creditors.

In the Opposition, Agra adds the allegation that the Debtor's bad faith filing is based on New York common law fraud.  (Opposition at 15.)  Agra alleges that the Debtor had a duty to disclose the NYSDHR litigation to the Court and the trustee and did not.  (*Id*.)  But the Debtor did disclose Agra's asserted claim.  The Debtor scheduled Agra as an unsecured creditor being owned no monies from the Debtor.  (*See* ECF Doc. # 64 at Line 3.695.)  To the extent Agra is arguing that the Debtor had a duty to more specifically delineate in the schedules that the Claim involved Agra's NYSDHR complaint, Debtors have no such duty.  *See In re: Jamesway Corp*., 1997 WL 327105 at *9 (Bankr. S.D.N.Y. June 12, 1997) (finding notice of bar date sufficient and recognizing "the purpose of the notice requirement is to advise individuals who will be affected by the outcome of any proceeding of the impending hearing so that they can take steps to safeguard their interests . . . [not] to advise them of the nature of those interests").  *See also DPWN Holdings (USA), Inc. v. United AirLines, Inc.*, 871 F. Supp. 2d 143, 154 (E.D.N.Y. 2012) (stating "a lack of notice of the character of the claims also should not violate due process and prevent discharge of the claims.  A claimant that receives notice of bankruptcy proceedings has a duty to reasonably investigate what debts it is owed").  Thus, Agra's allegation that the Debtor's failure to specifically delineate the nature of Agra's claim constitutes fraud fails as a matter of law.

In sum, Agra has not plausibly alleged that Debtor's Chapter 11 petition was filed in bad faith and Count II of the Complaint is dismissed.

4. <u>Counts IV and V of the Complaint Fail as a Matter of Law</u>

Count IV seeks to pierce the Debtor's corporate veil to prevent fraud and accomplish justice. (Complaint ¶¶ 192, 200) The purpose of a claim to pierce the corporate veil is to allow a plaintiff to recover from individuals within the corporation. *A. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130 (2d Cir. 1997) ("Typically, piercing analysis is used to hold individuals liable for the actions of a corporation they control.") But as noted above, Agra has no claim against the Debtor and thus has no basis to pierce the veil. Accordingly, Count IV and V fail as a matter of law and is dismissed.

5. <u>Count VI of the Complaint Fails to State a Claim</u>

In Count VI of the Complaint, Agra seeks to substantively consolidate the Debtor's estate with non-debtors Gemide, Major Model Miami, MensBoard Management, Dolci, and Nadia Shahrik. (Motion at 6, 19).

The ability of a court to substantively consolidate two entities arises from "the court's general equitable powers set forth in Section 105 of the Bankruptcy Code." *In re Republic Airways Holdings Inc.*, 565 B.R. 710, 716 (Bankr. S.D.N.Y. 2017) (internal citation omitted). "The power to consolidate should be used sparingly because the possibility of unfair treatment of creditors of a corporate debtor who have dealt solely with that debtor without knowledge of its interrelationship with others." *In re Republic Airways Holdings Inc.*, 565 B.R. at 716 (quoting *Chem. Bank N.Y. Trust Co. v. Kheel*, 369 F.2d 835, 837 (2d Cir. 1966)).

In determining whether substantive consolidation is warranted, the Second Circuit focuses on the following two critical inquiries: "(i) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending creditor; or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors."

16

*In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir. 1988) (internal citations omitted).

Here, Agra alleges that (i) Gemide capitalized the Debtor and received an economic benefit from the Debtor, who is its subsidiary; (ii) Dolci and Shahrik capitalized the Debtor, and (iii) Gemide was involved t in *Green Fashion Week*. (Motion at 20.) None of these three allegations plausibly state a claim with respect to either of the two factors that courts in this Circuit require for substantive consolidation. Accordingly, Count VI is dismissed.

6. <u>Agra Has Not Established Excusable Neglect</u>

In his Opposition, Agra appears to seek leave to file a late proof of claim without a cross motion. His request is denied as his failure to act was not based on excusable neglect.

"When creditors fail to file claims before a bar date despite having notice to do so, Bankruptcy Rule 9006(b)(1) gives the court the discretion to enlarge the time to file claims where the failure to act was the result of excusable neglect." *In re: Lehman Bros. Holdings Inc.*, 433 B.R. 113, 119 (Bankr. S.D.N.Y. 2010). "The [party seeking enlargement] bears the burden of establishing excusable neglect." *In re: Residential Capital, LLC*, 2015 WL 2256683 at *9 (Bankr. S.D.N.Y. May 11, 2015) (*quoting In re: BH S & B Holdings*, LLC, 435 B.R. 153, 168 (Bankr. S.D.N.Y. 2010)). To determine whether there is excusable neglect, the Supreme Court held that courts should consider the following four factors: ". . . [1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Pioneer Investment Services Co. v. Brunswick Associates,* 507 U.S. 380, 395 (1993).

17

"'The Second Circuit strictly observes bar dates and has adopted what has been characterized as a 'hard line' in applying the Pioneer test,' meaning that this Court should focus its analysis 'primarily on the reason for the delay, and specifically whether the delay was in the reasonable control of the movant.'" *Residential Capital*, 2015 WL 2256683 at \*9 (quoting *In re: Lehman*, 433 B.R. at 119–20). "Only in unusual instances would . . . ignorance . . . or mistakes construing the rules . . . constitute excusable neglect." *Residential Capital*, 2015 WL 2256683 at \*9 (quoting *BH S & B Holdings*, 435 B.R. at 168).

As to the first two *Pioneer* factors, allowing Agra to file a proof of claim now would severely prejudice the Debtor and have a substantial impact on the Chapter 11 proceeding. Agra seeks to file a proof of claim in excess of a year after the Bar Date and post-Confirmation of the Plan. If he was permitted to do so, the Debtor will be forced to modify the Plan to account for his claim (even if it is disputed) which will impact the distribution to creditors. The Debtor will need to resolicit votes for the Plan, which is a costly endeavor given there are in excess of 800 creditors in this case and proceed with another confirmation hearing. Further, it would disrupt the current Plan which was arrived at after significant time and expense was undertaken by the Debtor, the Subchapter V Trustee, the Debtor's insurance company and Stefanie Hoffmann's counsel.

Further, as to the third *Pioneer* factor, Agra has not established a reasonable basis for his delay. On April 22, 2022, notice of the June 6, 2022 Bar Date was sent to Agra, which notice warned him that if he ". . . fail[ed] to. . . timely fil[e] a proof of claim . . . [he] shall not be treated as a creditor . . ." (*See* Peña Dec., Exhibit A.) It is undisputed that Agra received notice of the Bar Date. Agra claims he did not file a proof of claim for three main reasons: 1) because by the Debtor's participation in the NYSDHR administrative proceedings toward mediation the Debtor

lead Agra to believe the proceeding would continue notwithstanding the bankruptcy; 2) the Debtor did not report its bankruptcy status to the NYSDHR until after the bar date, meaning that Agra was not directed to file a proof of claim by the NYSDHR until after the bar date; 3) Agra's NYSDHR administrative proceeding against the Debtor was not listed in the Debtor's list of its liabilities and Agra was listed on the Debtor's schedules for "notice purposes only." But Agra does not dispute that he had notice of the bar date. (Opposition ¶ 22 ("In May 2022, I also received the notice of the Bar Date").) He essentially argues that because the claim was labeled as an "NYSDHR claim" on the schedules, he was not aware that he needed to file a proof of claim. But the Bar Date Notice explained that because Agra's claim was "disputed" if he did not file a claim by the bar date, his claim would be barred. (*See* Bar Date Notice § 4(b)) (explaining in essence that if a claim is a disputed a creditor must file a proof of claim).) Agra knew about his claim, knew about the Bar Date, and nonetheless failed to file a proof of claim.

As to the Fourth Factor, the Court does not conclude that Agra acted in bad faith, but nevertheless, given the length of the delay and the lack of a valid reason for the delay, the Court finds that Agra has not established excusable neglect.

[*remainder of page left blank*]

## V. CONCLUSION

For the reasons stated above, the Motion is **GRANTED** and the Complaint is **DISMISSED WITH PREJUDICE** with respect to the Debtor.[2] Nothing herein affects Agra's rights to pursue his claims against the non-debtor defendants (Dolci, Sharik, Tacchini, Major Miami LLC, Gemide SRL and Mensboard Management, Inc.).

**IT IS SO ORDERED.**

Dated:   August 18, 2023
         New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge

---

[2] Since the claims fail as a matter of law, permitting Agra to amend the complaint would be futile.